UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:                                             Case No. GK 19-05109-jtg

MELISSA TESCH,                                     Chapter 13

              Debtor.                              Hon. John T. Gregg

_____/

## OPINION REGARDING OBJECTION
## TO AMENDED PROOF OF CLAIM

APPEARANCES:  Elizabeth T. Clark, Esq. for Brett N. Rodgers, Chapter 13 Trustee; Karen L. Rowse-Oberle, Esq., Butler Rowse-Oberle PLLC for Frankenmuth Credit Union

Frankenmuth Credit Union ("FCU") filed an amended proof of claim asserting a deficiency balance after disposing of its collateral.  Because FCU's amended proof of claim was not filed prior to the deadline established by the plan and confirmation order, Brett N. Rodgers, the chapter 13 trustee (the "Trustee"), requests that the court disallow the deficiency claim in its entirety.

FCU disagrees, arguing that although its amended proof of claim was not filed on or before the deadline in the confirmed plan, it relates back to FCU's original proof of claim, which was timely.  Alternatively, FCU maintains that even if its amended proof of claim is tardy, its deficiency claim should nonetheless be allowed as a result of excusable neglect.

For the following reasons, the court shall sustain the Trustee's objection to FCU's amended claim.[1]

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (L).

---

[1]      The following constitutes this court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  The facts are derived from the Trustee's objection, FCU's response, the supplemental briefs filed by the parties, and the court's docket, of which the court takes judicial notice under Fed. R. Evid. 201.

## BACKGROUND

Approximately two years prior to the petition date, FCU loaned to Melissa Tesch, the debtor (the "Debtor"), funds for the purchase of a motor vehicle. As security for repayment of the debt, the Debtor granted FCU a purchase money security interest.

On December 10, 2019, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.[2] That same day, the Debtor filed her proposed original chapter 13 plan [Dkt. No. 6], which states, in pertinent part, that the vehicle will be surrendered to FCU upon confirmation. (Plan at ¶ III.C.4.) The plan provides the following with respect to secured creditors like FCU whose collateral is surrendered:

> With regard to secured claims filed by creditors holding liens in personal property surrendered pursuant to the Plan . . ., each such secured creditor . . . must file a claim asserting its unsecured deficiency . . ., if any, by no later than 180 days after entry of the order confirming the Plan. The proof of claim for any deficiency [sic]. Attached to the proof of claim for the deficiency must be a detailed statement providing, if applicable, the property was disposed of, . . . the amount of any sale proceeds [sic] a summary of costs incurred in connection therewith, and the unsecured deficiency balance remaining. This proof of claim must be filed even though a previous secured or unsecured claim was asserted prior to the surrender, . . . or disposition of the property. . . The failure to timely file a deficiency . . . claim means that such creditor shall be precluded from receiving further distributions under the Plan and such clam shall be subject to discharge.

(Plan at ¶ IV.G.2.)[3] FCU was served with a copy of the Debtor's proposed plan [Dkt. No. 10] shortly after it was filed.

---

[2]   The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*. Specific sections of the Bankruptcy Code are identified herein as "section __." The Federal Rules of Bankruptcy Procedure are set forth in Fed. R. Bankr. P. 1001 *et seq*. and are referred to herein as "Bankruptcy Rule ___." References to "[Dkt. No. ___]" are to entries on the docket in this case.

[3]   The Debtor attempted to use the model plan approved for use in the Western District of Michigan under Fed. R. Bankr. P. 3015.1 and LBR 3015(d). In several places, the Debtor's plan deviates from the model plan. The Debtor's plan should have included unaltered paragraph IV.G.2 of the model plan, which provides as follows:

On January 17, 2020, FCU filed proof of claim no. 5, which asserts a claim secured by the Debtor's vehicle in the amount of $9,522.94.  Less than one month later, FCU, the Debtor, and the Trustee stipulated to relief from the automatic stay with respect to the Debtor's vehicle [Dkt. No. 26].  The stipulation and proposed order, which was entered by the court on February 4, 2020 [Dkt. No. 27], further provided that FCU could file an unsecured proof of claim for any deficiency upon disposition of the vehicle.  The stipulation and order were silent as to the deadline to assert any such deficiency claim.

With no objection from FCU or any other party, this court entered an order [Dkt. No. 29] confirming the Debtor's plan, as amended, on March 31, 2020.[4]  Under the confirmed plan, general unsecured creditors are to receive a pro rata share of the greater of "$2,000 or payment from all disposable income to be received by the Debtor(s) in the [applicable commitment period]."  (Plan at ¶ III.F.)  FCU was served with a copy of the text confirmation order via CM/ECF.  *See* LBR 5005-4.

---

With respect to secured claims filed by creditors holding liens in personal property surrendered pursuant to the Plan . . ., each such secured creditor . . . must file a claim asserting its unsecured deficiency . . ., if any, by no later than 180 days after entry of the order confirming the Plan.  The proof of claim for any deficiency . . . must be conspicuously identified on the proof of claim as an "UNSECURED DEFICIENCY CLAIM". . .  Attached to the proof of claim for the deficiency . . . must be a detailed statement providing, if applicable, the date the property was disposed of, . . . the amount of any sale proceeds, a summary of costs incurred in connection therewith, and the unsecured deficiency balance remaining.  This proof of claim must be filed even though a previous secured or unsecured claim was asserted prior to the surrender . . . or disposition of the property. . .  The failure to timely file a deficiency . . . claim means that such creditor . . . shall be precluded from receiving further distributions under the Plan and such claim shall be subject to discharge.

Although the deviation in paragraph IV.G of the Debtor's plan is not identified as a "non-standard provision" in paragraph IV.R, it does not impact adjudication of the issues before the court.  The court shall therefore treat the deviation as an inadvertent harmless error.

[4]      Prior to the confirmation hearing, the Debtor filed a preconfirmation plan amendment [Dkt. No. 28] addressing matters not relevant to the present dispute.

The docket reveals very little activity in the Debtor's case after confirmation. Behind the scenes, however, FCU alleges, and the Trustee does not dispute, that FCU and/or its repossession agent encountered difficulty recovering the vehicle due to the evasive actions of the Debtor and restrictions imposed as a result of the COVID-19 health pandemic. FCU and/or its agent eventually recovered the vehicle on June 17, 2020. According to FCU, the vehicle was sold on October 13, 2020.[5]

Around the time that the vehicle was sold, FCU sent the Debtor correspondence entitled "Notice of Surplus or Deficiency." The notice, which was not filed on the docket and does not appear to have been sent to the Trustee, informs the Debtor that FCU sold the vehicle for $4,180.00, leaving a deficiency of $6,607.69.[6]

On December 7, 2020, at least two months after the vehicle was sold, FCU filed its amended proof of claim. FCU's amended proof of claim, like the notice it sent to the Debtor, asserts an unsecured deficiency balance of $6,607.69.

Monitoring the claims register closely, the Trustee filed an objection to FCU's amended proof of claim on the same day it was filed. In his straightforward objection, the Trustee notes that paragraph IV.G of the confirmed plan required FCU to file any amended proof of claim for its deficiency within 180 days after confirmation (*i.e.*, no later than September 27, 2020). Because FCU's amended proof of claim was not filed until December 7, 2020, the Trustee requests that the claim be disallowed. FCU filed a short response in which it generically argues that it should be

---

[5]    It is unclear if the vehicle was actually sold on October 13, 2020. FCU attached a check and check stub to its amended proof of claim. The check, representing the proceeds from the sale of the vehicle, is dated September 30, 2020. The check stub references a date of September 23, 2020.

[6]    FCU does not contend that the notice constitutes an informal amended proof of claim.

excused from complying with the deadline as a result of the Debtor's conduct and restrictions related to the COVID-19 pandemic.

After holding a preliminary hearing on the objection, the court entered an order [Dkt. No. 38] requiring supplemental briefs and scheduling an evidentiary hearing, among other things.[7]  In its brief, FCU argues that although it did not comply with the deadline in the confirmed plan, its amended proof of claim is nonetheless timely.  Relying on Bankruptcy Rule 7015 and/or a similar test adopted by other courts, FCU reasons that its amended claim relates back to its initial claim. In addition, even if its amended proof of claim is somehow untimely, FCU contends that any failure on its part was the result of excusable neglect under Bankruptcy Rule 9006(b)(1).

The Trustee counters in his brief by arguing that because FCU was at all times aware of the deadline to file amended proofs of claim in the confirmed plan, it is bound by the confirmation order.  Moreover, the Trustee emphasizes that the equities in this case, whether under the label of excusable neglect or otherwise, do not favor FCU.

### DISCUSSION

The Bankruptcy Code and the Bankruptcy Rules establish the framework to determine whether a claim is timely asserted.  Section 501 provides that a creditor may file a proof of claim in a bankruptcy case.  11 U.S.C. § 501; *see* 11 U.S.C. § 101(5).  Section 502 governs the allowance of claims by stating that "[a] claim . . ., proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."   11 U.S.C. § 502(a).   Upon the filing of an objection, a bankruptcy court is required to determine the amount of any claim and deem it allowed in such amount "except to the extent that . . . [such] proof of such claim is not timely filed. . ." 11 U.S.C. § 502(b)(9).  A claim, proof of which is "tardily filed," may be allowed so long as it is

---

[7]     The parties subsequently filed, and the court approved, a stipulation dispensing with the evidentiary hearing [Dkt. Nos. 42, 43].

"permitted under paragraph (1), (2), or (3) of section 726(a) . . . or under the Federal Rules of Bankruptcy Procedure. . ." *Id.*[8]

Bankruptcy Rule 3002 implements section 502 by establishing the deadline for filing proofs of claim in cases under chapters 7, 12 and 13. Fed. R. Bankr. P. 3002(c); *see United States v. Chavis (In re Chavis)*, 47 F.3d 818, 823 (6th Cir. 1995) (compliance with Bankruptcy Rule 3002 is prerequisite to allowance under section 502). In chapter 13 cases, "a proof of claim is timely filed if it is filed not later than 70 days" after the petition date. Fed. R. Bankr. P. 3002(c); *see* 11 U.S.C. § 301(b). The deadline in Bankruptcy Rule 3002(c) is fairly rigid, as it is subject to only seven enumerated exceptions, none of which are applicable in this matter. Fed. R. Bankr. P. 3002(c)(1) – (7); *see Brenner's Restoration, Inc. v. Somerville (In re Somerville)*, 605 B.R. 700, 705 (Bankr. D. Md. 2019) (list of exceptions is "static and without catch-all or similar discretionary category.").

In this case, FCU complied with Bankruptcy Rule 3002(c) by timely filing its *initial* proof of claim on January 17, 2020. Acknowledging that FCU's initial proof of claim was timely, the Trustee focuses on the deadline in the confirmed plan for filing *amended* proofs of claim, which is not directly addressed anywhere in the Bankruptcy Code or the Bankruptcy Rules.

A.      *The Plan and Confirmation Order Prescribe the Deadline for Amended Proofs of Claim*

FCU concedes that it did not technically comply with the deadline to file amended proofs of claim pursuant to the deadline in paragraph IV.G of the Debtor's confirmed plan.[9] However, FCU argues that its amended claim relates back to its initial claim both in substance and in time notwithstanding the Debtor's confirmed plan.

---

[8]      Section 726(a) does not apply in a case under chapter 13, notwithstanding the reference to it in section 502(b)(9). 11 U.S.C. § 103(b); *In re Mackinder-Manous*, 2015 WL 790883, at *2-3 (Bankr. E.D. Ky. Feb. 24, 2015).

[9]      FCU has not argued that the deadline should be equitably tolled.

FCU primarily relies on Bankruptcy Rule 7015, which incorporates Fed. R. Civ. P. 15.  *See In re Unroe*, 937 F.2d 346, 349 (7th Cir. 1991); *cf. In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992) (applying Fed. R. Civ. P. 15 but only by analogy).  Subsection (c) to Fed. R. Civ. P. 15 is entitled "Relation Back of Amendments."  It provides, in pertinent part, that "a[n] amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  According to FCU, because its amended proof of claim relates back to the initial proof of claim, it, too, is timely.

FCU's reliance on Fed. R. Civ. P. 15(c) is misplaced.  By its express terms, Fed. R. Civ. P. 15 only applies to "pleadings," a term defined to include only complaints, answers, counterclaims, crossclaims, third party complaints, and if ordered by the court, replies to answers.  Fed. R. Bankr. P. 7007 (incorporating Fed. R. Civ. P. 7); *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015).  While a proof of claim might be viewed by some courts as a complaint or analogous thereto, a proof of claim is nevertheless not a "pleading."  *See* Fed. R. Civ. P. 7; *In re Bozeman*, 616 B.R. 407, 414 (Bankr. M.D. Ala. 2020).  Moreover, when the Trustee filed his objection, he initiated a contested matter under Fed. R. Bankr. P. 9014.  *Kelly v. Mace (In re Mace)*, 573 F. App'x 490, 496 (6th Cir. 2014); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 n.8 (6th Cir. 1989).  Although Bankruptcy Rule 9014(c) identifies other rules that are applicable to contested matters, Bankruptcy Rule 7015 is not one of them.[10]  For these reasons, the court is not persuaded that Fed. R. Civ. P. 15 applies to FCU's amended proof of claim.

---

[10]    Bankruptcy Rule 9014(c) states that the court can direct that Bankruptcy Rules not specifically listed nonetheless apply.  At no time in this case has the court directed that Bankruptcy Rule 7015 applies to the claims resolution process.

As an alternative to Fed. R. Civ. P. 15, FCU turns to principles of equity, which courts have long applied to amended claims. *See, e.g.*, *Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Die Co.)*, 164 F.2d 228, 230 (6th Cir. 1947) (citation omitted); *see also United States v. Jones*, 2000 WL 1175717, at *2-3 (W.D. Mich. June 28, 2000) (citations omitted) (court has discretion regarding allowance of amended claims) (McKeague, J.).  FCU directs this court to a judicially made, two-part test used by other courts to determine if an amended proof of claim is timely. *See, e.g.*, *In re Channakhon*, 465 B.R. 132, 140-41 (Bankr. S.D. Ohio 2012) (collecting cases).  Under this test, the court first considers whether the amended claim is related to an original, timely asserted claim. *See, e.g.*, *id.* at 141-43.  If the amended claim is actually a "new claim," the inquiry ends, and the amended claim is disallowed or otherwise treated in a chapter 7 case. *See* 11 U.S.C. § 502(b)(9).  But if it is truly an amended claim, the court next considers whether the equities favor allowance. *See, e.g.*, *id.* at 143-45.

FCU argues that its amended claim relates back to its original (both in substance and in time) because, at its core, the amended claim arises from the same conduct, transaction, or occurrence as the initial claim. *See, e.g.*, *United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216-1217 (11th Cir. 1985).  The court agrees with FCU, at least with respect to the substance of its amended claim. *See In re Ashland Steel Co.*, 168 F. 679, 681 (6th Cir. 1909) ("claim . . . refers to the substance of the obligation, rather than to any mere attribute of it.").  Both the initial claim and the amended claim are based on the financing that FCU provided to the Debtor, with the surrender and subsequent sale of FCU's collateral triggering the need for the amendment. That is more than enough to create a sufficient nexus between FCU's initial claim and its amended claim.

Substance and time are separate concepts, however.  Accordingly, this court does not share FCU's view that its amended claim relates back in time given the limitation imposed by the Debtor's plan and the confirmation order.  Paragraph IV.G of the Debtor's plan unambiguously establishes a deadline of 180 days after entry of the confirmation order to file an amended proof of claim where a creditor's collateral is surrendered.  That same paragraph further provides that an amended claim must be asserted even if the creditor filed a proof of claim prior to the surrender and/or disposition of its collateral.  In fact, it goes one step further by putting creditors on notice that their failure to adhere to the deadline not only precludes them from receiving further distributions under the plan but also subjects any deficiency claim to the debtor's discharge.  And while the decisions of other courts adopting the two-part test are well-reasoned, they are all distinguishable because in none of them did the court need to consider the effect of a previously entered order establishing a deadline for filing amended proofs of claim.

FCU offers no persuasive reason to depart from, if not entirely disregard, this court's confirmation order.  *See* 11 U.S.C. § 1327(a); *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (absent objection, confirmation order is enforceable and binding so long as notice is proper).[11]  FCU was served with the Debtor's plan and the text confirmation order.  During the preliminary hearing, FCU acknowledged that it was aware that paragraph IV.G of the plan contained the deadline.  Yet at no point did FCU object to the plan, seek to set aside all or a portion of the confirmation order, or otherwise request that the deadline be enlarged prior to its expiration.  FCU is therefore bound by the 180-day deadline established upon entry of the confirmation order.

---

[11]     Although paragraph IV.G of the confirmed plan functions more like a general bar date order than a typical chapter 13 plan provision, it is not inconsistent with the other provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 1322(b)(11).

C.       *FCU Is Not Entitled to an Enlargement of Time to File Its Amended Proof of Claim*

Perhaps recognizing that it is subject to paragraph IV.G of the confirmed plan, FCU argues that any failure on its part was the result of excusable neglect.  FCU relies on Bankruptcy Rule 9006(b), which provides that:

> Except as provided in paragraphs (2) and (3) of this subdivision, *when an act is required or allowed to be done at or within a specified period* by these rules or by a notice given thereunder or *by order of court*, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

Fed. R. Bankr. P. 9006(b)(1) (emphasis added).

Although Bankruptcy Rule 9006(b) generally applies to the enlargement of time, it is not all encompassing.  *See* Fed. R. Bankr. P. 9006(b)(2), (3); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 n.4 (1993) (time provisions in Bankruptcy Rule 9006 "are generally applicable to any time requirement found elsewhere in the rules unless expressly excepted.").  A court cannot use Bankruptcy Rule 9006(b)(1) to enlarge the time for taking action under certain other rules, including Bankruptcy Rule 3002(c).  Fed. R. Bankr. P. 9006(b)(3).  And Bankruptcy Rule 3002(c) does not provide an exception for a creditor's excusable neglect.  *See, e.g., In re Tench*, 2016 WL 2892497, at *3 (B.A.P. 6th Cir. May 11, 2016).  FCU's reliance on excusable neglect would therefore seem to be unavailing.

Yet there is a crucial distinction in this case, where, as the parties note, the issue is not whether FCU complied with the deadline under Bankruptcy Rule 3002(c) to file its *initial* proof of claim – it clearly did.[12]  Rather, the issue is whether FCU complied with the deadline in the

---

[12]       Neither the Trustee nor FCU interpret paragraph IV.G of the confirmed plan as disallowing untimely amended claims without further order of the court.  Rather, both parties seem to subscribe to the interpretation that

confirmed plan to file its *amended* proof of claim.  *See In re Breaux*, 410 B.R. 236, 238 (Bankr. W.D. La. 2009).  Bankruptcy Rule 9006(b) permits enlargement of a time period previously established by a court order, like the confirmation order at issue in this case.  Fed. R. Bankr. P. 9006(b)(1) ("when an act is required . . . to be done at or within a specified period . . . by order of court. . ."); *accord* 11 U.S.C. § 502(b)(9) (referring to the Bankruptcy Rules in general).  In the absence of any express provision in the Bankruptcy Code or the Bankruptcy Rules, the court holds that where the court has entered an order in a chapter 13 case prescribing the deadline to file an amended proof of claim, a creditor may seek to enlarge that time period pursuant to Bankruptcy Rule 9006(b)(1).

In this case, paragraph IV.G of the confirmed plan in no way interferes with the deadline set forth in Bankruptcy Rule 3002(c), which remains in effect.[13]  The deadline in the plan is born out of practicality, providing a creditor like FCU with six months to dispose of its collateral and account for the proceeds thereof.  If for whatever reason the creditor encounters difficulty in doing so before the expiration of that deadline, Bankruptcy Rule 9006(b)(1) allows the court to enlarge the time "for cause."[14]

Unfortunately for FCU, it did not seek to extend the time in which to file its amended proof of claim before the deadline expired.  As such, FCU, as the party requesting enlargement, bears

---

even untimely amended claims are allowed until subject to objection and, ultimately, adjudication by the court.  If, for some reason, paragraph IV.G were interpreted to prospectively disallow untimely amended claims without the need for objection or further adjudication, FCU could have requested reconsideration.  *See* 11 U.S.C. § 502(j); *see also* Fed. R. Bankr. P. 3008.  Neither party has raised section 502(j), however, and given that the section requires a court to make a determination based on the "equities of the case," the outcome in this case would likely be the same.

[13]      To be clear, Bankruptcy Rule 3002(c) controls with respect to the time in which to file an *initial* proof of claim in chapter 13.

[14]      Where a time period has yet to expire, Bankruptcy Rule 9006(b) flexibly provides that a court may exercise its discretion by enlarging a time period for cause with or without a motion.  Fed. R. Bankr. P. 9006(b)(1).  FCU does not qualify for relief under this standard because the 180-day deadline had already expired by the time FCU responded to the Trustee's objection.

the burden of demonstrating that its neglect was in fact excusable. *See, e.g.*, *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 121 (2d Cir. 2005).[15]

In *Pioneer Inv. Servs.*, the United States Supreme Court considered whether a creditor's failure to comply with a bar date in a chapter 11 case was the result of excusable neglect under Bankruptcy Rule 9006(b)(1). 507 U.S. at 380. Emphasizing the "elastic" nature of the inquiry, the Court explained:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 392, 395.

Upon consideration of the facts and circumstances in this case, the court concludes that FCU has not demonstrated that its neglect was excusable. First, FCU argues that if its amended claim is allowed, the Debtor will not suffer any prejudice under the Debtor's current plan, a point largely conceded by the Trustee. However, the Debtor's general unsecured creditors holding allowed claims would experience at least a nominal reduction (*i.e.*, 2%) in their pro rata share of the dividend, assuming it does not change. If the dividend were to change as contemplated in paragraph III.F of the plan, the allowance of FCU's amended claim would arguably have a more (or less) profound impact. Hypotheticals aside, the court concludes, based on the limited record before it, that FCU's amended claim is unlikely to result in unfair prejudice to the general unsecured creditor constituency.

---

[15] FCU did not file a motion as required by Bankruptcy Rule 9006(b)(1). Because the Trustee did not object on this basis, the court will treat FCU's procedural shortcoming as a harmless error.

Second, FCU emphasizes that the length of delay is insignificant, given that the amended proof of claim was filed just over two months after the deadline. The court disagrees. The Debtor's confirmed plan provided FCU with 180 days from the date of confirmation to file its amened proof of claim, a more than reasonable period of time for FCU to dispose of its collateral. Upon realizing that it might need additional time to assert its deficiency, FCU could have (i) notified the Trustee through informal communications that it was encountering difficulty, (ii) requested that the Trustee stipulate to extend the deadline, (iii) filed a motion requesting the same, and/or (iv) even amended its proof of claim to assert an estimated deficiency with an explanation as to the need for the estimate.

By being proactive, FCU would have, at best, procured an order from this court. At worst, FCU would have put the Trustee on notice, thereby supporting an argument premised on an informal amended proof claim. Instead, FCU did nothing. As such, when the deadline expired on September 27, 2020, it was more than reasonable for the Trustee to assume that he need not make any further distributions to FCU or continue to withhold any amounts to account for FCU's deficiency claim.

To compound the problem, even when FCU did belatedly assert its amended claim, it failed to file a motion for enlargement, as expressly required under Bankruptcy Rule 9006(b)(1). Rather, FCU seemingly crossed its fingers, even though it had been aware of the proposed surrender and related deadline in paragraph IV.G for close to one year. Contrary to FCU's contention, the court finds that FCU's delay was quite significant under the circumstances.

Third, FCU contends that the reasons for the delay were beyond its control. The court agrees, but only up to a point. Clearly, the COVID-19 pandemic disrupted the ordinary course of business on many levels. Yet FCU has not directed this court to any specific federal, state, or local

restrictions that remained in place after early June 2020, when, by its own admission, FCU resumed efforts to recover the Debtor's vehicle. Instead, the court is left to guess as to the continuing impact of the pandemic on FCU's efforts to liquidate its collateral.

Moreover, while the court has no reason to dispute the allegation that the Debtor was evasive and dilatory, FCU recovered the vehicle on June 17, 2020. At that point, the vehicle was apparently prepared and marketed for sale, which did not occur for another three to four months. FCU did not seek to admit testimony (including by affidavit) from its repossession agent, its own representative, or some other person to explain the reasons for the delay after the vehicle was recovered. Nor did FCU seek to introduce any documentary evidence that might explain why it took FCU more than three months after the date of recovery to liquidate its collateral. Indeed, even after the vehicle was sold in late September or early October 2020, FCU did not promptly amend its proof of claim. Instead, it inexplicably waited another two months before doing so. Ultimately, FCU has only itself to blame for the delay in asserting its amended claim.

Finally, FCU argues that it acted in good faith at all relevant times. The court has no reason to find otherwise.

Taking all of these factors into account, the court must conclude that FCU has not satisfied its burden of demonstrating excusable neglect. Certainly, FCU could have diligently undertaken action both before and after the expiration of the deadline in the Debtor's confirmed plan, but it simply did not.

### CONCLUSION

FCU timely filed its *initial* proof of claim under Bankruptcy Rule 3002(c). However, because FCU failed to file its *amended* proof of claim within the time period prescribed by the chapter 13 plan and confirmation order, the deficiency claim is tardy. Based on the facts and

circumstances of this case, FCU's neglect is not excusable under Bankruptcy Rule 9006(b)(1), meaning that its amended claim must be disallowed.

For the foregoing reasons, the Trustee's objection is sustained.  The court shall enter an order consistent with this Opinion.

**Signed: May 10, 2021**





John T. Gregg
United States Bankruptcy Judge